*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

v.

RODNEY B. MACK, JR.,
                    *Defendant-Appellant*.

No. 12-5451

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:09-cr-00098-1—Thomas W. Phillips, District Judge.

Argued: August 1, 2013

Decided and Filed: September 6, 2013

Before: MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant. Kelly Ann Norris, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant. Kelly Ann Norris, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. Rodney B. Mack, Jr., appeals his conviction at jury trial on three counts of aiding and abetting carjacking, in violation of 18 U.S.C. §§ 2119 & 2; three counts of aiding and abetting robbery affecting interstate commerce, in violation of 18 U.S.C. §§ 1951 & 2; and three counts of aiding and abetting the use or carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) & 2. For the reasons explained below, we AFFIRM all counts

of conviction. The defendant seeks reversal and remand for resentencing on all three § 924(c) convictions in light of the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), but because the *Alleyne* error was harmless, we AFFIRM the sentences.

## I. BACKGROUND

The defendant and his accomplice committed three similar carjackings and armed robberies in Knoxville, Tennessee, on July 23, 28, and 30, 2009. On each occasion, one of the men called in a food order to a pizza restaurant and requested delivery to a vacant house where the two men waited. When the delivery driver arrived, the men robbed the driver at gunpoint, taking the car, money, cell phone, food, and other property.

The first incident took place around noon on July 23. A delivery driver for Domino's Pizza, Mary Francis Miller, arrived at 422 Houston Street to find a vacant house and two men sitting on the front porch. She left her car running in the driveway and approached. The taller man walked toward the mailbox. The shorter one motioned to the taller one and said, "Yo, do you have the money?" Miller turned toward the taller man, but he did not say a word. When she turned around to again face the shorter person, he pointed a heavy, black steel gun at her. She heard it make a "click-click" noise. Although she was terrified, she did not run to her car because she was sure she would be shot if she did.

The shorter robber ordered Miller to be quiet and follow him to the back of the house. Believing he intended to kill her, she begged him not to shoot her. Once they were behind the house, the robber ordered her to remove her fannypack and throw it to the ground. While pointing the gun at her chest, he retrieved $60 in cash from the fannypack. As he turned to leave, he told her to stay behind the house and remain silent. Miller obeyed his instruction for about a minute before she walked to the front of the house to find her car gone. Besides the car, the men stole Miller's cell phone, as well as other personal property belonging to Miller and Domino's.

During the criminal investigation, Miller described her cell phone to the police as a small, black, Cricket phone. Shortly after the robbery, she tried calling her cell phone to pick up voicemail messages, but a young male answered the phone. Miller described the shorter robber as a young, African American male with "bumpy" hair who wore long, black, baggy, gym shorts, a baggy t-shirt, and white, high-top, Converse tennis shoes. She was able to observe his face because he did not wear a disguise, sunglasses, or a hat, and he stood close to her during the robbery. When shown a photographic lineup by the police, Miller positively identified the defendant as the shorter robber with one hundred percent certainty. She also identified the defendant in the courtroom. Miller could not identify the taller robber.

Police later found Miller's vehicle in the parking lot of Townview Towers Apartments where the defendant lived in apartment D-209. Black shorts and a pair of white tennis shoes were seized from the defendant's apartment pursuant to a search warrant, and at trial Miller identified the clothing as similar to that worn by the defendant on the day of the robbery. An FBI agent seized a small, black, Cricket cell phone from the defendant on the day of his arrest. At trial, Miller identified the cell phone as the one stolen from her.

The second robbery and carjacking occurred on July 28, 2009, around 10:30 p.m. A customer named "Smith" used Miller's cell phone to call in a delivery order at Papa John's Pizza. The delivery driver, Crystal Walker, drove to the corner of Gleason Road and Hayden Drive. Although the house appeared to be vacant, she left her car running in the driveway and approached two young African-American men waiting near the house. One man was taller than the other, and both were dressed in t-shirts and jeans. Neither man wore anything to cover his face.

As Walker approached, the taller man was standing on the porch while the shorter one was standing near the porch bannister talking on a small, black, cell phone. The shorter man appeared to reach into his pocket for money. At that moment, the taller person walked around behind Walker, grabbed her by the arm and pushed a black metal handgun into her back. Although Walker was scared, she did not run for fear of being

shot or killed. The man holding the gun led her to the porch where both men demanded her cell phone at least four to six times. Walker repeatedly told them that her phone was in the car. The taller robber ordered Walker to lie face down on the porch and warned that he would shoot her if she did not cooperate. The shorter robber also urged Walker to cooperate. She eventually turned over $185 in cash. As the robbers ran to her car, they instructed Walker to remain where she was or she would be shot. Walker did not move as the men jumped into her car and drove away, stealing her property and Papa John's as well.

Police recovered Walker's car within two hours after the robbery. When police asked her to describe the robbers, Walker recalled that the shorter robber had braided hair, but she could not define any characteristics of the taller robber. When shown a photographic lineup, she identified two photographs which, if put together, would resemble the shorter robber. She did not make an in-court identification of the defendant.

The third robbery and carjacking occurred shortly after midnight on July 30, 2009. Domino's delivery driver Ryan Johnson drove his car to 216 Suburban Road to deliver pizzas. When he arrived, a man was pacing the sidewalk talking on a cell phone. Because the house was dark, Johnson parked his car on the street, left it running, and asked the man on the sidewalk for payment. The man replied that he did not have enough money so he would get his friend to pay the rest. Johnson followed the man to the porch, where a second, shorter man said, "Yeah, I have the money," pulled out a heavy, black, metal pistol, and pointed it at Johnson's face. Johnson heard the man rack the slide on the firearm, placing a bullet into the chamber. The shorter robber told Johnson that he would be shot if he did not do as he was told, placing Johnson in fear for his life.

Pointing the gun continuously at Johnson, the shorter robber said, "You know what this is" and ordered Johnson to follow him onto the porch and lie face down on the floor. He pressed the barrel of the gun into the nape of Johnson's neck while the two men emptied Johnson's pockets and continuously asked for a cell phone. Each time

Johnson denied having a phone, the shorter robber pressed the gun more forcefully into the base of Johnson's skull. The robbers stripped Johnson of his eyeglasses and clothing, then jumped into his car and drove away. Police found Johnson's clothes lying in the street about a block away from the robbery scene. Later the same night, police recovered Johnson's car at the Copper Pointe Apartments.

Johnson described both robbers as wearing dark clothing. The shorter robber had spiky hair with short nubs and scruffy facial hair. When shown a photographic lineup by the police, Johnson identified the defendant with one hundred percent certainty as the shorter robber, but he could not identify the taller robber. At trial, Johnson again identified the defendant and confirmed that a pair of black, Air Jordan tennis shoes taken from the defendant's apartment pursuant to the search warrant were similar to the shoes worn by the shorter robber. Johnson also identified a cell phone, taken from the defendant on the day of his arrest, as the one stolen from Johnson during the robbery and carjacking. Cell phone records proved that Walker's cell phone, which was stolen on July 28, was used to call in the pizza order that Johnson tried to deliver on July 30.

The firearm used in these crimes was not recovered. Forensic analysts tried to locate fingerprints or palm prints on the recovered items that might link a suspect to the crimes, but those efforts were unsuccessful.

## II. ANALYSIS

We must resolve six issues, including whether: (1) the district court erred in admitting evidence under Federal Rule of Evidence 404(b); (2) the court should have granted judgment of acquittal on the carjacking counts because the prosecution failed to prove that the defendant had the "intent to cause death or serious bodily harm"; (3) the court gave an improper jury instruction on the intent element of carjacking; (4) the court gave an improper jury instruction on "proof beyond a reasonable doubt"; (5) the court should have conducted a hearing on possible juror taint; and (6) resentencing is required on the § 924(c) convictions in light of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Finding no error warranting reversal, we affirm the convictions and sentences.

## A. Admission of Rule 404(b) evidence

The first issue we consider is whether the district court erred in admitting the government's evidence of a prior robbery that occurred in Georgia. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

In deciding whether to admit evidence under Rule 404(b), the district court applies a three-step analysis. *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). First, the court must find, based on sufficient evidence, that the other act in question actually occurred. *Id.* The court next decides whether the evidence is probative of a material issue other than character. *Id.* Finally, the court determines whether any unfair prejudice generated by the other act evidence is substantially outweighed by its probative value. *Id.*

When we review a decision to admit Rule 404(b) evidence, we apply a tripartite standard of review. *See id.*; *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010); *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008); *United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006); *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005). We examine for clear error the district court's factual determination that the other act occurred. *Clay*, 667 F.3d at 693. We review de novo the district court's legal determination that the other act is admissible for a permissible purpose under Rule 404(b), and we review for an abuse of discretion the district court's determination that the probative value of the evidence substantially outweighed the danger of any unfair prejudice. *See id.*

At the trial in this case, the district court allowed the jury to hear evidence about a robbery that two men committed in Georgia approximately seventeen months before the carjackings and robberies on trial. This evidence was presented to the jury through the testimony of an FBI Agent who read from a certified transcript of a guilty plea

hearing in the Georgia state case. Although the defendant in that case, Rodney Bernard Mack, Jr., was initially charged with a serious robbery offense, he entered a guilty plea to a reduced misdemeanor charge of disorderly conduct. According to the state prosecutor's factual basis statement presented to support the guilty plea, the robbery victim was approached by the defendant and his accomplice on a public sidewalk. The victim took special note of the shorter of the two men because he had short twists in his hair and he was dressed in blue jean shorts and a white tank top. The taller man, who wore a black jacket, told the victim he had a Glock in his pocket and demanded the victim's property. The victim immediately turned over his food and his cell phone. The victim later pointed Mack out to the police as one of the two people who robbed him, and Mack was taken into custody.

The government offered this evidence under Rule 404(b) for the purpose of proving identity. The court admitted the evidence for that purpose, instructing the jury twice of its limited utility in deciding the case. On appeal, the defendant challenges the admission of the evidence as propensity evidence that was unfairly prejudicial to him. Although the question presented is a close one, we ultimately conclude that the evidence should not have been admitted.

The prosecution is not required to prove by a preponderance of the evidence that a prior bad act occurred, but it may not present similar acts "connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). At the time the district court decided to admit this other-act evidence, the government had not confirmed on the record that the Rodney Bernard Mack, Jr. who pled guilty in Georgia state court was the same Rodney B. Mack, Jr., who was then on trial. The court also did not make a factual finding that the Georgia crime actually occurred. The FBI Agent read the facts of the incident from the certified transcript and told the jury, without elaboration, that the caption on the transcript related to "the defendant, Rodney Mack." It was only when the defendant testified and admitted pleading guilty in Georgia that the court and jury knew for certain that the same person was involved in both incidents. If the Rule 404(b) evidence had been excluded from the

government's case, the defendant surely would not have addressed the Georgia case during his trial testimony.  The lack of the requisite factual finding that the prior act occurred constitutes clear error.  *See Clay*, 667 F.3d at 693.

The Georgia robbery also was not sufficiently probative of the defendant's identity to warrant admission.  Prior bad act evidence is probative if it is sufficiently similar to the charged crimes to establish the defendant's pattern, modus operandi, or "signature."  *See id.* at 699; *United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010); *United States v. Perry*, 438 F.3d 648, 648 (6th Cir. 2006); *United States v. Hopper*, 436 F. App'x 414, 420–21 (6th Cir. 2011).  But the crimes need not "be identical in every detail."  *Perry*, 438 F.3d at 648 (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982)).

The three Tennessee robberies were committed in a similar pattern or by use of a similar modus operandi.  But the Georgia charge arose from a typical street robbery in which the victim fortuitously turned over a cell phone and food to the robbers.  The Georgia crime did not involve calling in food orders, luring delivery drivers to vacant houses, stealing cell phones that were later used to set up future robberies, or carjacking. Because the Georgia robbery lacked the pattern or modus operandi of the Tennessee robberies, the jury essentially heard forbidden propensity evidence because the jurors were required to pile "inference upon inference" to draw the conclusion that the defendant was involved in all of the incidents.  *See Clay*, 667 F.3d at 699.

We are unable to consider the district court's reason for finding the Georgia incident probative of identity because the court stated only:  "I think it's proper 404(b) evidence."  Because the Rule 404(b) evidence was not sufficiently probative of identity, it should not have been admitted, and because the admission was erroneous, we also must necessarily conclude that the Rule 403 balancing of probative value against the risk of unfair prejudice amounted to an abuse of discretion.  *See id.* at 693.

Although the Rule 404(b) evidence should not have been admitted, reversal on this basis is not warranted.  "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a).  Error is "harmless

unless it is more probable than not that the error materially affected the verdict." *See Clay*, 667 F.3d at 700 (internal quotations and citations omitted). Stated another way, admission of other-act evidence constitutes harmless error "if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error." *Id.* (quoting *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011).

We think this standard is met here. Miller and Johnson both identified the defendant with one hundred percent certainty as the shorter man who robbed them at gunpoint. Miller's stolen vehicle was found in the parking lot of the apartments where the defendant lived. Clothing similar to that worn by the defendant during the carjackings and robberies was found in his apartment during the execution of a search warrant. On the day the defendant was arrested, he possessed the two cell phones stolen from Miller and Johnson. Call records proved that Miller's and Walker's stolen cell phones were used to place food delivery orders for subsequent robberies. By returning guilty verdicts on all counts, the jury necessarily rejected the defendant's testimony that he was not involved in the carjackings and robberies. The strength of the trial evidence eliminates any fair assurance that the conviction was substantially swayed by the erroneous admission of the Rule 404(b) evidence. *See Clay*, 667 F.3d at 700. Accordingly, we deny relief on this ground.

**B. Evidence of "intent to cause death or serious bodily harm"**

The defendant next argues that the district court should have granted his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 because the government failed to prove "brandishing-plus" to establish that he possessed "the intent to cause death or serious bodily harm" as required by the carjacking statute, 18 U.S.C. § 2119. He acknowledges that *United States v. Fekete*, 535 F.3d 471 (6th Cir. 2008), forecloses his argument, but he preserves the issue in the event the Supreme Court should revisit *Holloway v. United States*, 526 U.S. 1 (1999).

In reviewing this issue, we consider whether, after taking the evidence in a light most favorable to the prosecution, any rational trier of fact could have found this

essential element of carjacking beyond a reasonable doubt. *See United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013). The act of brandishing a firearm during a carjacking, without more, is not sufficient to prove specific intent to kill or cause seriously bodily harm to the victim. *See Holloway*, 526 U.S. at 11. The government must produce evidence that the defendant did more than make an "empty threat" or "intimidating bluff." *Id.* "[I]f a defendant brandishes a firearm and (1) physically touches the carjacking victim, or (2) there is direct proof that the firearm was loaded, § 2119's specific intent element will be satisfied." *United States v. Washington*, 714 F.3d 962, 968 (6th Cir. 2013). Even without physical touching or direct proof that the firearm was loaded, the intent element can be satisfied through proof of "brandishing-plus": that is, "additional direct or circumstantial evidence . . . support[ing] a finding that the defendant would have killed or seriously harmed the victim if the victim had resisted." *Id.* (quoting *Fekete*, 535 F.3d at 480). If the government produces evidence of intent beyond brandishing, the jury looks to "the totality of the circumstances to evaluate whether the defendant's words and actions sufficiently demonstrated a conditional intent to cause death or serious bodily harm." *Fekete*, 535 F.3d at 481.

Although the firearm used in the carjackings and robberies was not recovered, the government presented circumstantial evidence that the firearm was loaded during at least two of the carjackings and robberies. Both Miller and Johnson heard the defendant rack the slide on the weapon. FBI Agent Paul Hughes testified that a handgun will make a clicking sound when the action is racked to place a bullet into the firing chamber. While it is "conceivable" that a slide could rack without a bullet in the magazine, he explained that the rack would slide to the rear and lock.

Miller testified that the defendant pointed the gun at her chest continuously during the robbery. Pointing a gun at a person while demanding conformity with particular action clearly implies a victim will be killed or injured if she refuses to comply. *See Fekete*, 535 F.3d at 482. Although Miller acknowledged that the defendant did not threaten to shoot her, it was the jury's prerogative to decide under the totality of the circumstances whether his words and actions sufficiently demonstrated a conditional

intent to cause death or serious bodily harm to Miller if she did not comply with his demands. *See id.* at 481. The jury returned a verdict on count one finding the defendant guilty of the carjacking of Miller.

The government also presented evidence that, during two of the robberies, the firearm was brandished and the victims were physically touched. Walker described how the taller man put the gun into her back as the two men forced her to lie face down on the porch and turn over her property. Johnson recalled how the defendant forcibly pushed the firearm into the back of his head repeatedly as the two men stripped him of his property. Even if the defendant did not personally do these acts, he aided and abetted the conduct of his accomplice. The witnesses' testimony was sufficient to show that the defendant possessed "the intent to cause death or serious bodily harm" to support conviction on the carjacking counts. *See Washington*, 714 F.3d at 968.

Having reviewed the evidence in the light most favorable to the government in considering the denial of the defendant's Rule 29 motion, *see United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2962 (2011), we conclude that the defendant did not carry his heavy burden to show that the evidence was insufficient to prove he possessed the intent to cause death or serious bodily harm. *See United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). Consequently, we affirm the district court's denial of the defendant's Rule 29 motion.

**C. Jury instruction on intent to prove carjacking**

The next issue concerns whether the district court adequately instructed the jury on the element of intent required to prove carjacking. The lack of an objection below means that we review the issue only for plain error. *See United States v. Semrau*, 693 F.3d 510, 527 (6th Cir. 2012). In this context, plain error occurred if we find that the jury instructions taken as a whole were so erroneous as to likely produce a grave miscarriage of justice. *Id.* at 528. Before finding plain error, we must determine that the instructions, viewed as a whole, were confusing, misleading, or prejudicial, or the district court's error, if any, seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

At trial, the district court instructed the jury that one element the government was required to prove beyond a reasonable doubt was that "the defendant intended to cause death or serious bodily harm at the time he took the motor vehicle." The court specifically instructed the jury that the government had to prove that the defendant "had a real and present ability to inflict death or serious bodily harm" and that "the defendant had the ability to carry out the threat." The court then explained to the jury how to consider any proof bearing on the defendant's state of mind.

The elements instruction would have been more complete if it had elaborated on *Fekete's* brandishing-plus test in language the jury could understand. The instructions as given and taken as a whole, however, were not so confusing, misleading, or prejudicial as to cause a grave miscarriage of justice. *See Semrau*, 693 F.3d at 528. The jury instructions sufficiently captured the pertinent legal concepts to pass plain error review.

**D. Jury instruction on reasonable doubt**

Next, the defendant challenges the jury instruction on reasonable doubt. We also review this issue for plain error because the defendant did not object below. *See Semrau*, 693 F.3d at 527.

The district court read to the jury the entirety of Sixth Circuit Pattern Criminal Jury Instruction 1.03. That instruction included a definition of reasonable doubt, specifically informing the jury in part that "[p]roof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives."

Citing *Holland v. United States*, 348 U.S. 121, 140 (1954), the defendant now contends for the first time on appeal that the district court should not have used the phrase, "willing to act." This is a perplexing argument because "willing to act" did not appear in the district court's instruction. As the commentary to pattern jury instruction 1.03 confirms, the district court followed *Holland* and circuit precedent when the court used "would not hesitate to rely and act on it" rather than "might be willing to act upon."

*See Holland*, 348 U.S. at 140; *United States v. Stewart*, 306 F.3d 295, 306–07 (6th Cir. 2002).  Because the reasonable doubt instruction was correctly worded, no plain error occurred.  *See Semrau*, 693 F.3d at 527.

**E.  Lack of a *Remmer* hearing**

We turn to the defendant's contentions that juror taint infected his trial and that the district court improperly denied him a hearing under *Remmer v. United States*, 347 U.S. 227 (1954).  On the last afternoon of trial, in the presence of the defendant and his counsel, the prosecutor notified the court about an incident that occurred during the lunch break.  The prosecutor explained that FBI Agents Hughes and Morrow talked to each other about the case while ordering food at a local restaurant.  When they noticed a juror sitting in the restaurant, they immediately stopped their conversation.  The agents did not speak to the juror, but they were not sure if the juror overheard the conversation.

The court investigated the matter by asking FBI Agent Hughes several questions about the encounter.  The court learned that the agents talked about the case while standing at the lunch counter, the restaurant was not crowded or noisy, the juror was seated eight to ten feet behind the agents, and when Agent Hughes spotted the juror out of the corner of his eye and turned to look, the juror was reading a book.  The agents then stopped conversing.

After considering this information, the court decided not "to make an issue of it" on the ground that further inquiry could unnecessarily highlight the matter in the eyes of the jurors.  The defense did not object or request a *Remmer* hearing.  Accordingly, our review is for plain error.  *See* Fed. R. Crim. P. 52(b).

A defendant is entitled to a *Remmer* hearing to establish actual bias of a juror "only when the alleged contact presents a likelihood of affecting the verdict." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997).  "[N]o presumption of prejudice arises merely from the fact that improper contact occurred." *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999).  Here, the district court discharged its duty to investigate and decide whether there may have been a violation of the Sixth Amendment right to a fair

and impartial jury.  *See id.*  "[A] defendant who waits until appeal to request a hearing bears a heavy burden, since the defendant has thereby effectively deprived this court of any basis for concluding that a hearing would be necessary, and asks us to presume that the district court would not have acceded to such a request, and would have done so for erroneous reasons."  *United States v. Walker*, 160 F.3d 1078, 1083 (6th Cir. 1998).  Under the circumstances, no plain error exists that would justify reversal on this ground.

## F.  Section 924(c) sentencing in light of *Alleyne*

The final issue concerns sentencing on the defendant's three convictions under 18 U.S.C. § 924(c).  The district court found that the defendant brandished a firearm during the first robbery and carjacking, as charged in count three, and imposed a 7-year sentence on that count under § 924(c)(1)(A)(ii).  Because the jury convicted the defendant of two other § 924(c) offenses charged in counts nine and twelve, the court found them to be second or subsequent convictions and imposed consecutive 25-year sentences on those counts under § 924(c)(1)(C)(i).

In *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), the Supreme Court held that any fact increasing the mandatory minimum sentence for a crime is an "element" of that crime, not a sentencing factor, and therefore, the "element" must be submitted to the jury for determination.  *Alleyne* is factually on point with this case because the Supreme Court held that the jury, not the district court, must make a finding that a defendant brandished a firearm during and in relation to a crime of violence under § 924(c) before the court may impose the enhanced 7-year statutory mandatory minimum sentence for brandishing instead of the 5-year statutory mandatory minimum sentence for using or carrying a firearm.  *Id.* at 2162–63.  The analysis of *Alleyne* springs from *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), where the Court held the Sixth Amendment requires any fact that increases the penalty for a crime beyond the prescribed statutory maximum sentence, other than the fact of a prior conviction, must be submitted to the jury and proved beyond a reasonable doubt.

The defendant did not raise a Sixth Amendment challenge in the district court, and the Supreme Court decided *Alleyne* during the pendency of this appeal.  Under the

circumstances, we apply plain error review.  *See* Fed. R. Crim. P. 52(b); *Johnson v. United States*, 520 U.S. 461, 466–67 (1997); *United States v. Olano*, 507 U.S. 725, 732 (1993).  We may consider relief for an error not raised below only if we find (1) error, (2) that is "plain," and (3) that affects the substantial rights of the defendant.  *See Johnson*, 520 U.S. at 467.  If these three conditions are met, then we may exercise our discretion to notice the forfeited error, but only if we find the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings.  *Id.*

Under *Alleyne*, an error occurred below.  The indictment charged the defendant in counts three, nine, and twelve with using, carrying and brandishing a firearm.  The district court's instruction to the jury on the elements of the § 924(c) charges spoke only of using or carrying a firearm.  When the court defined the phrase, "active employment" of a firearm, the court included "brandishing" and "displaying" as conduct covered by § 924(c).  The jury verdict form, however, did not require the jurors to make a specific finding about whether the defendant brandished a firearm.  At sentencing, the district court made a finding that the defendant brandished a firearm. *Alleyne* permits only the jury, not the district judge, to make a finding on brandishing.  We must apply this new rule to cases like this one pending on direct review.  *See Johnson*, 520 U.S. at 467; *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

To determine whether the second part of the *Olano* test is met, we need only consider whether the error is "plain"—in other words, clear or obvious—at the present time of our appellate review.  *Johnson*, 520 U.S. at 467–68; *United States v. Oliver*, 397 F.3d 369, 379 (6th Cir. 2005).  We conclude that the error is now clear or obvious.  The district court understandably followed Supreme Court precedent, in effect at the time of sentencing, "that judicial factfinding . . . increas[ing] the mandatory minimum sentence for a crime is permissible under the Sixth Amendment."  *Alleyne*, 133 S. Ct. at 2155 (citing *Harris v. United  States*, 536 U.S. 545 (2002)).  But the Supreme Court overruled *Harris* in *Alleyne*, making it clear from our vantage point that the error below was "plain."  *See United States v. Yancy*, __ F.3d __, 2013 WL 3985011, *2 (6th Cir. Aug. 6, 2013) (applying plain error review and affirming imposition of 7-year sentence

under § 924(c) where defendant admitted at guilty-plea hearing that he brandished firearm during carjacking).

With plain error apparent on the record, we next consider whether the defendant's substantial rights were affected. "This third step is akin to the harmless error analysis employed in preserved error cases," *United States v. King*, 272 F.3d 366, 378 (6th Cir. 2001) (internal quotation marks omitted), and requires us to ask "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder v. United States*, 527 U.S. 1, 15 (1999) (internal citation omitted).

Since *Chapman v. California*, 386 U.S. 18 (1967), the Supreme Court "has applied harmless-error analysis to a wide range of errors," recognizing that "most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Automatic reversal is necessary only where structural error deprives the defendant of "basic protections" without which the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577–78 (1986) (citation omitted). Examples of structural error include the complete denial of counsel or the right of self-representation, trial judge bias, racial discrimination in the selection of a grand jury, denial of a public trial, and use of a defective reasonable-doubt instruction. *Neder*, 527 U.S. at 8 (citing cases). By contrast, "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9. A district court's error in instructing a jury on the elements of a crime is subject to harmless-error review because it is not "so intrinsically harmful as to require automatic reversal (*i.e.*, 'affect substantial rights') without regard to" the effect of the error on the outcome of the case. *Id.* at 7. The "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error" and is subject to harmless-error review. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006).

The defendant relies on a case decided after *United States v. Booker*, 543 U.S. 220 (2005), to argue that the *Alleyne* error present in this case amounts to plain error requiring a remand for resentencing. *See United States v. Morgan*, 435 F.3d 660 (6th Cir. 2006). *Morgan* in turn relied on *Oliver*, 397 F.3d at 377–78, where we read *Booker* "as encouraging us to review" for plain error cases pending on direct appeal where the Sixth Amendment issue was not asserted below. *Oliver*, 397 F.3d at 378. In both *Morgan* and *Oliver*, we remanded for resentencing under *Booker*. But we decided those cases before the Supreme Court issued *Recuenco*, which squarely controls this case. Where a court's instruction fails to submit a sentencing factor to the jury for determination, we must decide whether the error was harmless. *See Recuenco*, 548 U.S. at 222.

"Safeguarding the jury guarantee" requires us to conduct "a thorough examination of the record" in conducting our harmless-error review. *See Neder*, 527 U.S. at 19. If it is clear to us beyond a reasonable doubt that the outcome would not have been different even if the district court had instructed the jury on the element of brandishing and required the jury to make a finding on that element, then harmless error occurred. *See id.* at 18; *United States v. Kuehne*, 547 F.3d 667, 681 (6th Cir. 2008).

Count three of the indictment charged the defendant with using, carrying, and brandishing a firearm during the carjacking and robbery of Domino's delivery driver, Mary Francis Miller, on July 23, 2009. At trial Miller testified that the defendant produced a firearm and pointed it at her chest during the course of the robbery. The government presented similar evidence of firearm brandishing by the defendant or his accomplice during the subsequent robberies and carjackings of delivery drivers Crystal Walker and Ryan Johnson. The defendant did not dispute below or on appeal that the perpetrator brandished a firearm during these crimes; rather, the defendant disputes that he was the perpetrator. The jury rejected the defendant's denial of his involvement and convicted him on all counts. The undisputed trial evidence convinces us that, if properly instructed, the jury would have found beyond a reasonable doubt as to counts three and twelve that the defendant brandished a firearm during the robberies of Miller and

Johnson and as to count nine that the defendant aided and abetted his accomplice in brandishing a firearm during the robbery of Walker.  Any *Alleyne* error was therefore harmless, and automatic reversal is not warranted.  *See Recuenco*, 548 U.S. at 222; *Neder*, 527 U.S. at 18; *Kuehne*, 547 F.3d at 681–82.  We need not consider the fourth part of the *Olano* plain-error test, but "[o]n this record there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'"  *Johnson*, 520 U.S. at 470.

Our conclusion that the *Alleyne* error was harmless and that plain error has not been shown is consistent with cases recently decided in other circuits.  *See*, *e.g.*, *United States v. Kirklin*, __ F.3d __, 2013 WL 4106462, *5–7 (7th Cir. Aug. 15, 2013) (assuming without deciding that *Alleyne* error affected the defendant's substantial rights, but finding harmless error at *Olano*'s fourth step); *United States v. Baylor*, __ F. App'x __, 2013 WL 3943145, *12–13 (4th Cir. Aug. 1, 2013) (unpublished per curiam) (finding harmless error where record would have supported a jury finding of brandishing).  *But cf. United States v. Lara-Ruiz*, 721 F.3d 554, 558–60 (8th Cir. 2013) (reversing and remanding for resentencing, without discussing harmless error, because *Alleyne* error substantially affected the defendant's Sixth Amendment rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings); *United States v. Lake*, __ F. App'x __, 2013 WL 4017293, *1 (10th Cir. Aug. 8, 2013) (same).

Finally, the defendant challenges for the first time on appeal the consecutive 25-year sentences imposed on counts nine and twelve for the § 924(c) convictions relating to the Walker and Johnson incidents.  Arguing that *Alleyne*'s reasoning calls into doubt the continued vitality of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the defendant contends that the jury had to find that these two convictions qualified as "second or subsequent" convictions under § 924(c)(1)(C)(i) before the court could impose consecutive 25-year sentences on each count.

In *Almendarez-Torres*, 523 U.S. at 228–29, 247–48, the Supreme Court held that the Sixth Amendment does not require the government to set forth in the indictment and

prove beyond a reasonable doubt the fact of a prior conviction.  Although *Almendarez-Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly overrules it.  *See Alleyne*, 133 S. Ct. at 2160 n.1; *United States v. Anderson*, 695 F.3d 390, 398 (6th Cir. 2012); *United States v. Wynn*, __ F. App'x __, 2013 WL 3941316, *1 (6th Cir. July 31, 2013) (per curiam). This challenge is without merit.

## III.  CONCLUSION

We recognize that the defendant's trial and sentencing were not without error. Having carefully examined the record, however, we are satisfied that the defendant received a fundamentally fair trial.  Accordingly, we AFFIRM the defendant's convictions and sentences.