**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0464n.06

No. 18-3568

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 04, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| DELANTE L. LUNN, | ) | **OPINION** |
| | ) | |
| **Defendant-Appellant.** | ) | |

**BEFORE: NORRIS, CLAY, and SUTTON, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** A jury convicted defendant Delante Lunn of selling a mixture of heroin and fentanyl to Shanee Dowler who died of an overdose not long after making the purchase. Her death eventually led to the return of an indictment charging defendant with two counts of drug trafficking, 21 U.S.C. § 841(a)(1), and three counts of using a "communication facility" in furtherance of that trafficking, 21 U.S.C. § 843(b). The trafficking count that involved Ms. Dowler included an enhanced penalty provision requiring the jury to find beyond a reasonable doubt that the drugs she received from defendant "resulted in" her death. 21 U.S.C. § 841(b)(1)(C).

Prior to trial defendant pleaded guilty to one count of drug trafficking and one count of using a communication device. These charges stemmed from a controlled purchase of heroin from defendant by a confidential informant as part of the subsequent investigation into Ms. Dowler's death.

On appeal, defendant focuses on the trafficking count that involved Ms. Dowler (Count 1), which carried a mandatory minimum sentence of twenty years' imprisonment because of the sentencing enhancement. Specifically, he raises five assignments of error: 1) whether the district court improperly instructed the jury with respect to the penalty enhancement included in Count 1; 2) whether constitutionally sufficient evidence supported a guilty verdict with respect to that enhancement; 3) whether the district court erred when it permitted the introduction of evidence related to the controlled purchase of heroin from defendant by a confidential informant even though defendant had already pleaded guilty to that charge; 4) whether the district court erred by allowing testimony from a former heroin addict about the defendant; and 5) whether trial counsel rendered ineffective assistance by failing to obtain the services of a qualified expert to testify about the cause of Ms. Dowler's death.

**I.**

In his opening statement, government counsel characterized Ms. Dowler's death as "another statistic in an epidemic that has taken over Northeast Ohio." The testimony at trial supports that assessment; although tragic, Dowler's death fits a familiar pattern. At the time of her overdose, she was a 25 year-old recovering heroin addict who was attending an outpatient treatment program after a heroin overdose in July 2015. In January 2016, she moved into a home with Roma Black and her companion, Thomas Ellick, as well as Black's adult daughter and son. According to Black, she thought of Dowler as a daughter.

Despite her progress in recovery, Dowler's path had not been slip-free. In February, a month after moving in with Black, Dowler admitted that "she was doing Xanax." Black warned her, "You know, that leads up to other things for you and you need to be clean from that in this house." Dowler promised that she "wouldn't do it anymore" and Black believed her.

Despite this assurance, on the evening of Wednesday, February 17, Dowler told Black that she was going to see a friend named Gus, a name used by defendant. When Black entered the kitchen the next morning, she encountered Dowler who was "extremely out of it" and drinking a beer. Dowler admitted being drunk and that she had taken Xanax. When Black scolded her, Dowler replied, "I'm sorry Ma, I won't do it again."

Later that day Dowler arranged for her step-sister, Brianna Roberston, to pick her up. Although she told the others in the house that the pair were going to a substance abuse meeting, they were back in less than an hour. Both Black and her daughter, Heather Nelson, who also lived in the home, testified that they knew Dowler had not attended a meeting because she was home too quickly.

Where did Dowler and Robertson go instead of to a meeting? At trial Robertson testified that she had talked to Dowler on the phone around nine that morning. Dowler mentioned that she had recently met a man named Gus at a bar. By comparing Facebook friends, they eventually realized that they both knew Robertson. According to Robertson's trial testimony, Dowler told her that she and Gus had spent the night at his house. He "got her high and they had sexual relations."

According to Robertson, this was "the first time I heard that [Dowler] was using drugs again." Dowler asked Robertson to give her a ride that afternoon to purchase Xanax. Robertson agreed and took her teenage cousin with her. They picked Dowler up who instructed Robertson to drive to Gus's house. On their way, Dowler asked Robertson to send Gus a message asking him for the "same thing" that he had given her the night before. Robertson recalled that Dowler "also snorted a Xanax off of a CD case in my back seat" during the drive.

When they arrived, Gus was sitting in his car. Dowler joined him in the front seat. After three or four minutes, she returned to Robertson's car. According to Robertson, "She asked me to

turn on the light so she could see what she was doing. And when I did that, that's when I seen what she had. And it was what I assumed to be heroin at the time." Robertson then drove Dowler home.

According to Heather Nelson, Dowler "seemed fine" when she first returned but began to act "really funny" around midnight. Nelson helped her into bed at 2 a.m. The next morning Nelson saw her again; Dowler was in the kitchen looking for some missing money. Nelson's brother, Bobby, who also lived in the house, "told her to take her drunk butt to bed." Later that morning Black discovered Dowler in her bed unresponsive. She called 911 but EMS arrived too late to revive her.

During a search of the bedroom the police found a "torn-off corner of a plastic baggie" near Dowler's body. According to Sergeant Vincent Ligas of the Elyria, Ohio police force, it contained a mixture of heroin and fentanyl. Other drugs, including two more Xanax pills and heroin, were found in Dowler's bedroom. The results of the forensic toxicology tests and blood samples taken from Dowler after her death will be discussed in conjunction with the arguments concerning causation. Suffice it to say here that even defendant's witness, pharmacist Robert Bello, conceded at trial that Dowler could have died from a mixed drug overdose.

As mentioned earlier, defendant pleaded guilty to one count of narcotics trafficking, 21 U.S.C. § 841(a)(1), and one count of using a communication device in furtherance of that trafficking, 21 U.S.C. § 843(b), prior to trial. He proceeded to trial on the remaining counts. A jury returned a guilty verdict on the second trafficking count, which included the penalty enhancement, as well as a second § 843(b) charge. The government dismissed the third § 843(b) count.

The district court sentenced defendant to 300 months of incarceration to be followed by three years of supervised release. This appeal followed.

## II.

We now turn to the assignments of error raised by defendant.

## 1: Contested Jury Instruction

The Statute

The sentencing enhancement at the heart of defendant's appeal provides that when someone sells specified illegal drugs to a person and "death or serious bodily injury results from the use of such substance," then the offender "shall be sentenced to a term of imprisonment of not less than twenty years or more than life." 21 U.S.C. § 841(b)(1)(C).

Standard of Review

We review challenges to jury instructions for an abuse of discretion. *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012) (citation omitted). Where, as here, counsel objects to the trial court's rejection of a proposed instruction, an abuse of discretion occurs when "(1) the proposed instruction is substantially correct; (2) the proposed instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impaired the defendant's theory of the case." *United States v. Henderson*, 626 F.3d 326, 342 (6th Cir. 2010) (quoting *United States v. Triana*, 468 F.3d 308, 315 (6th Cir. 2006)).

The Instruction

The district court instructed the jury as follows:

> In order for you to find for the Government on this question, the Government must prove the additional element that the Defendant's conduct resulted in death. In order to establish that the drugs distributed by the Defendant resulted in a death of the victim, the Government must prove that the victim died as a consequence of her use of the drugs that the Defendant distributed on or around the dates alleged in the indictment.
>
> This means that the Government must prove beyond a reasonable doubt that, but for the use of the drugs that the Defendant distributed, the victim would

5

not have died. But-for causation exists where the use of the controlled substance combines with other factors to produce death. And death would not have occurred without the incremental effect of the controlled substance.

The Government is not required to prove that the—that the Defendant intended to cause the death of the victim. Or that her death was foreseeable by the Defendant or by others.

Again, you must be convinced that the Government has proved this additional element beyond a reasonable doubt in order to find that the death resulted from the use of heroin and fentanyl distributed by the Defendant. If you are convinced that the Government has proved this, say so by answering yes to the related question on the verdict form. If you have a reasonable doubt about this element, then you must answer no to the related question on the verdict form.

Defense counsel objected to the "but-for" language of the instruction.

The jury form with respect to the enhancement read as follows:

Question 1(a): With respect to Count 1, do you unanimously find that the government proved beyond a reasonable doubt that death resulted from the use of heroin and fentanyl distributed by the Defendant, Delante L. Lunn?

Arguments of the Parties

The parties agree that the key case governing the resolution of this issue is *Burrage v. United States*, 571 U.S. 204 (2014). In *Burrage* the deceased overdosed on a combination of drugs, including one gram of heroin purchased from the defendant, Marcus Burrage. Two medical experts testified at trial. One of them, a forensic toxicologist, determined that multiple drugs were present in the deceased's system at the time of death. *Id.* at 207. However, he could not say whether the deceased "would have lived had he not taken the heroin." *Id.* The other medical expert came to a similar conclusion and "could not say whether [the deceased] would have lived had he not taken the heroin, but observed that [his] death would have been very less likely." *Id.* (quotation omitted). The trial court instructed the jury that the government must prove "that the heroin distributed by the Defendant was a contributing cause of . . . death." *Id.* at 208.

After noting that the sentencing enhancement at issue represented an element that must be submitted to a jury and found beyond a reasonable doubt, the Court narrowed the issue to "whether the use of heroin was the actual cause of [the decedent's] death in the sense that § 841(b)(1)(C) requires." *Id.* at 210. The Court then offered the following analysis:

> The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. H. Hart & A. Honore, Causation in the Law 104 (1959). When a crime requires "not merely conduct but also a specified result of conduct," a defendant generally may not be convicted unless his conduct is "both (1) the actual cause, and (2) the 'legal' cause (often called the 'proximate cause') of the result." 1 W. LaFave, Substantive Criminal Law § 6.4(a), pp. 464–466 (2d ed. 2003) (hereinafter LaFave); see also ALI, Model Penal Code § 2.03, p. 25 (1985). Those two categories roughly coincide with the two questions on which we granted certiorari. We find it necessary to decide only the first: whether the use of heroin was the actual cause of . . . death in the sense that § 841(b)(1)(C) requires.
>
> . . . .
>
> "[W]here A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died." LaFave 467–468 (italics omitted). The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.
>
> This but-for requirement is part of the common understanding of cause. Consider a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning. If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter. It is beside the point that the victory also resulted from a host of *other* necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game. By contrast, it makes little sense to say that an event resulted from or was the outcome of some earlier action if the action merely played a nonessential contributing role in producing the event. If the visiting team wound up winning 5 to 2 rather than 1 to 0, one would be surprised to read in the sports page that the victory resulted from the leadoff batter's early, non-dispositive home run.

> Where there is no textual or contextual indication to the contrary, courts regularly read phrases like "results from" to require but-for causality.

*Burrage*, 571 U.S. at 210-12 (citations omitted).

After examining the text of the enhancement, the Court reached the following conclusion:

> We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

*Id.* at 218.

As already mentioned, defense counsel below lodged an objection based upon the court's inclusion of "but-for" language in the instruction, which is precisely what the Court approved in *Burrage*. On appeal, counsel concedes that the Court endorsed a "but-for" analysis in *Burrage*, and instead focuses on the fact that the instruction in question included this language:

> But for causation exists where the use of the controlled substance combines with other factors to produce death. And death would not have occurred without the incremental effect of the controlled substance.

Counsel directs us to *United States v. Volkman*, a case that this court decided on remand in light of *Burrage*. 797 F.3d 377 (6th Cir. 2015). Although we affirmed the application of the enhancement, counsel argues that *Volkman* stands for the proposition that the court's "without the incremental effect" language in the jury instruction was misleading because it was not included in the *Volkman* instruction. *Id.* at 392-93. However, in affirming the sentencing enhancement, we reasoned as follows:

> [B]ut-for causation exists where a particular controlled substance—here, oxycodone—"combines with other factors"—here, *inter alia*, diazepam and alprazolmam—to result in death. *Burrage*, 134 S. Ct. at 888. The Government presented sufficient oxycodone-specific evidence for a rational jury to find that, "without the incremental effect" of the oxycodone, [the victim] would not have died. *Id.*

*Id.* at 395. Despite defendant's reliance upon it, *Volkman* is clearly unhelpful to her position. Another case relied upon by counsel is equally unpersuasive. *United States v. Smith*, 656 F.App'x 70, 74 (6th Cir. 2016) (citing without the "incremental effect" language of *Volkman*).

As the language from the cases cited above makes clear, the jury instruction as given passes muster. The incremental effect language is simply another way of saying that the distributed drug "was the straw that broke the camel's back," resulting in death. *Burrage*, 571 U.S. at 211.

**2: Sufficiency of the Evidence**

Defendant also contends that the evidence produced by the government at trial was insufficient to support the jury's verdict beyond a reasonable doubt with respect to the sentencing enhancement. When faced with this contention, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Dr. Frank Miller, the Chief Deputy Coroner of Lorain County requested a Drug Abuse Panel. It indicated that Ms. Dowler had benzodiazepines, in this case Alprazolam or Xanax, in her system. Fentanyl was also detected at a 3.3 nanogram per milliliter level, which Dr. Miller testified "is known to be a lethal dose." He summarized his verdict as to the cause of death as "a mixed drug overdose, including heroin fentanyl and benzodiazepines. Other significant conditions included a history of substance abuse." His direct testimony concluded with this exchange:

> Q.    What is your opinion as to why Shanee Dowler passed?
>
> A.    That she died from acute intoxication by the combined effects of fentanyl heroin and Alprazolam. And as I said before, it's heroin because she has six-monoacetylmorphine. The drugs next to her [nightstand] are heroin and fentanyl, and that is what's in her blood as well. And so that was my opinion, that she died of a drug overdose, and those are the drugs that—

Q.      Are the consumption of the drugs next to her on that counter, that heroin and fentanyl, the reason that Shanee Dowler died?

A.      Yes.

Dr. Miller went on to state that "fentanyl alone could have caused her death based on the testing." For him, fentanyl was the "lead suspect."

Despite this testimony, defense counsel argues that the government failed to produce sufficient evidence of but-for causation because Dowler died due to a combination of Alprazolam, heroin, and fentanyl. In short, "[t]he alleged fentanyl and heroin in her system was not each independently sufficient to cause Dowler's death." Brief at 36. She quotes the holding of *Burrage*:

> [W]here use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) *unless such use is a but-for cause of the death or injury*.

*Burrage*, at 218-19 (emphasis added). In her brief, counsel fails to address adequately the italicized language, which goes to the "straw that broke the camel's back" logic of *Burrage*. *Id.* at 211. Here, Dr. Miller testified that, while the Alprazolam ingested by Dowler would not have been fatal, when combined with the heroin and fentanyl allegedly supplied by defendant, it was. Thus, the drugs that the jury convicted defendant of distributing were a but-for cause of death, and the jury had sufficient evidence to find beyond a reasonable doubt that the sentencing enhancement was warranted.

**3: Introduction of Evidence to Related to Counts 4 and 5**

Defendant next contends that the introduction of evidence at trial about the two counts to which he had already pleaded guilty was improper under Federal Rule of Evidence 404(b). The rule reads in part as follows:

**Crimes, Wrongs, or Other Acts.**

**(1) Prohibited Uses**. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses; Notice in a Criminal Case**. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). While we generally review the admission of Rule 404(b) evidence for an abuse of discretion, *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010), we have acknowledged that certain of our cases have adopted a three-step approach. *See United States v. Mandoka*, 869 F.3d 448, 457 (6th Cir. 2017) (summarizing the two approaches). Defendant suggests that we review for an abuse of discretion and we do so here, although our conclusion would be the same under either standard.

As mentioned at the outset, as part of the investigation into Dowler's death, Elyria police detectives arranged for a confidential informant, Anthony Bouie, to make a controlled purchase of heroin from defendant. Bouie, who had died by the time of trial, had been briefly incarcerated with defendant. While the two shared living quarters, defendant allegedly told Bouie that his heroin was so good that it killed a girl. Bouie reported this conversation to the authorities who then arranged for the controlled purchase of over a gram of heroin, which was delivered in a clear bag. The government argued to the district court that the packaging was similar to the plastic baggy that was found on Dowler's nightstand and was admissible to show identity, intent, and knowledge.

The district court permitted the proposed testimony. At trial, the government called Elyria police detective Christopher Constantino who described the controlled buy between Bouie and defendant. Constantino also testified on cross-examination that the packaging of the heroin

11

purchased by the confidential informant was "similar, if not the same" as the packaging found on Dowler's nightstand.

For his part, defendant contends that the *res gestae*, or background, evidence introduced at trial should not have been admitted because it was "not a prelude to counts 1 and 2, was not an integral part of any witness's testimony, and did not complete the story of the charged offense." Brief at 40. Rather, the controlled purchase occurred seventy-eight days after Dowler's death.

At trial, the government and the district court largely focused on whether Constantino's testimony was admissible under Rule 404(b)(2), not whether it was admissible as *res gestae* evidence, and the government's arguments on appeal relate to Rule 404(b). Under Rule 404(b) and this Court's precedent, evidence of a "crime, wrong, or other act" is generally inadmissible, but may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2), so long as its probative value is not substantially outweighed by its likelihood of unfairly prejudicing the defendant. *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). To grant a defendant relief due to a district court's Rule 404(b) error, this Court must find both that the district court abused its discretion in admitting the evidence and that its error requires reversing the defendant's conviction. *See United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002). Reversing a defendant's conviction is not required if a district court's error was "harmless in light of the overwhelming evidence of [a] [d]efendant's guilt." *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001).

We affirm the district court on this point. Any error that it may have made in construing Rule 404(b) was harmless and therefore does not require reversal. Even if we assume that the district court erred in admitting Constantino's testimony, there was "overwhelming evidence of Defendant's guilt" in this case. *Murphy*, 241 F.3d at 453. Indeed, defendant eventually admitted

12

near the end of the trial that there was "pretty strong evidence [defendant] sold [Ms. Dowler] heroin" based on a message the victim sent defendant asking "is this H?" to which defendant replied, "yes." Thus, even if the district court abused its discretion in admitting the contested testimony, defendant's conviction must stand.

**4: Introduction of Defendant's Statement about Drugs in his Possession**

Without objection, the government called Melissa Cieszynski as a witness. She testified that she knew defendant from working as a bartender in Elyria. Cieszynski stated that she had been addicted to Vicodin and, later, to heroin. Defendant was a friend on Facebook: "Normally we talked about some sort of drugs." According to the Facebook exchanges between them introduced at trial, defendant sent the message, "I got fire," to Cieszynski shortly after allegedly selling heroin to Dowler. She understood that the "fire" was heroin.

Defense counsel argues that this evidence was not introduced for a permissible purpose under Rule 404(b), but instead in an attempt to prove Mr. Lunn's criminal character. In its pretrial motion to admit this evidence, the government contended that it helped to prove "absence of mistake relating to Defendant's sale of the deadly heroin/fentanyl to Dowler, as well as his knowledge and absence of mistake about the potential potency and nature of the drug." Defense counsel responds that the government did not need to establish state of mind with respect to potency to meet the elements of the charged offense.

The government points out that, while this issue would typically be reviewed for an abuse of discretion, trial counsel's failure to object makes our review one for clear error.

The evidence introduced by the government concerning defendant's statement about "fire" was arguably admissible as *res gestae* evidence because it "ar[ose] from same events as the charged offense," arguably "form[ed] an integral part of [Cieszynski]'s testimony," and in some

sense "complete[d] the story of the charged offense." *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Because our review is for clear error and there existed a reasonable basis for admitting this evidence as *res gestae*, defendant's argument fails.

**5: Ineffective Assistance**

Defendant argues that trial counsel rendered ineffective assistance by retaining a pharmacist rather than a medical pathologist to testify regarding causation at trial. Specifically, did the heroin and fentanyl mixture sold to Dowler "result in" her death? This circuit recognizes that the preferred mode for raising ineffective assistance claims is through a motion to vacate, 28 U.S.C. § 2255, in order to develop the record adequately in the district court. *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012).

There is nothing to suggest that the record here is adequately developed to determine whether counsel made a reasonable, strategic decision in selecting an expert. Accordingly, this argument should be raised to the district court in the context of a Section 2255 motion to vacate sentence.

**III.**

The judgment is **affirmed**.

**CLAY, Circuit Judge, concurring.** I concur in the judgment of the majority opinion, and in its reasoning as well, with one exception. Specifically, with respect to Issue 3, regarding the admissibility of Elyria police detective Christopher Constantino's testimony about the controlled buy between Anthony Bouie and Defendant, I do not find the majority's *res gestae* analysis persuasive. The majority's analysis is inconsistent with the district court's analysis and the government's argument—both of which discuss the testimony's admissibility under Federal Rule of Evidence 404(b)(2), not as *res gestae*. I would proceed under Rule 404(b) and conclude that Defendant is not entitled to relief.

At trial, the government and the district court largely focused on whether Constantino's testimony was admissible under Rule 404(b)(2), not whether it was admissible as *res gestae* evidence, and the government's arguments on appeal relate to Rule 404(b). (*See* Appellee's Br. 38–47; R. 84, Page ID# 831–32 (the government argues that this evidence is admissible because it goes to "to identity, intent, and knowledge"); R. 84, Page ID# 832 (the court states, "I think it is 404–B testimony"); R. 84, Page ID# 835 (the court instructs the jury to "consider [the] evidence only" for the purposes enumerated in Rule 404(b)(2))).[1] I would therefore proceed under Rule 404(b) rather than invoking the doctrine of *res gestae*.

Under Rule 404(b) and this Court's precedent, evidence of a "crime, wrong, or other act" is generally inadmissible, but may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2), so long as its probative value is not substantially outweighed by its likelihood of unfairly prejudicing

---

[1] The government argues that the testimony of Melissa Cieszynski and her Facebook messages with Defendant (discussed by the majority as Issue 4) were admissible as *res gestae* evidence (Appellee's Br. 49), and I agree with the majority's analysis of that issue.

the defendant. *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). To grant a defendant relief due to a district court's Rule 404(b) error, this Court must find both that the district court abused its discretion in admitting the evidence and that its error requires reversing the defendant's conviction. *See United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002). Reversing a defendant's conviction is not required if a district court's error was "harmless in light of the overwhelming evidence of [a] [d]efendant's guilt." *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001).

I would affirm the district court because any error the district court may have made in construing Rule 404(b) was harmless and therefore does not require reversal. Even if we assume that the district court erred in admitting Constantino's testimony, there was "overwhelming evidence of Defendant's guilt" in this case. *Murphy*, 241 F.3d at 453. Indeed, Defendant eventually admitted near the end of the trial that there was "pretty strong evidence [Defendant] sold [the victim] heroin" based on a message the victim sent Defendant asking "Is this H?" to which Defendant replied, "yes." (R. 84, Trial Tr., Page ID# 1041.) Thus, even if the district court abused its discretion in admitting Constantino's testimony, Defendant's conviction should stand.