**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0318n.06

No. 10-2003

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Mar 23, 2012***

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
v. ) On Appeal from the United States
) District Court for the Western
ANTHONY G. MERLO, ) District of Michigan
)
    Defendant-Appellant. )

Before:     MERRITT, BOGGS, and CLAY, Circuit Judges.

    BOGGS, Circuit Judge. Anthony Merlo claims that the government violated his plea agreement by using information he provided while cooperating with the government against him at sentencing and in regard to restitution. Merlo requests that this court remand his case for resentencing before a different judge. We affirm the district court's sentence and order of restitution.

I

    In 2004, the Internal Revenue Service received a tip that individuals were buying policies with the Security Trust Insurance Company (STIC) that might be fraudulent tax shelters designed to divert corporate income. STIC sold "loss-of-income" (LOI) insurance, which allowed corporate officers to purchase a policy that would cover loss of income from, for example, a slowdown in business or an act of God. The company's promotional materials advertised that the premium would be available for loan after one year, if the company had not made any claims on its policy. STIC

was, in fact, a fraudulent tax shelter. The company's scheme was to charge an excessively high premium for its policies and, in exchange for a percentage of the premium, make the premium payment available to be "loaned" immediately back to the payor, with the understanding that the "loan" needn't ever be repaid. The money "loaned" back to the payor was thus sheltered from taxation—premiums paid for business insurance are tax-deductible as a cost of doing business. *See* I.R.C §§ 62; 162 (allowing a deduction "all the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business"); *see also Humana, Inc. v. Comm'r*, 881 F.2d 247, 255–56 (6th Cir. 1989) (defining whether insurance shifts risk, as loss-of-income insurance does, as the test of whether an insurance premium is deductible under § 162).

A grand jury investigation revealed that STIC was operated by Peter Peggs, Robert Larsen, and Anthony Merlo; Craig Stone was its marketer. On October 3, 2007, the grand jury indicted Peggs, Stone, and Larsen on one count each of conspiracy to defraud the United States (Count One). Peggs and Larsen were additionally each charged with two counts of tax evasion.

A superseding indictment was filed on March 6, 2008. This indictment added Merlo and another co-defendant to Count One. After initially pleading not guilty, Merlo changed his plea to guilty pursuant to a plea agreement.

II

Merlo's plea agreement, filed May 7, 2009, contained a six-page statement of facts describing Merlo's criminal activities. It stated that the Assistant United States Attorney and the Tax Division

of the United States Department of Justice, who entered into the plea agreement with Merlo, would inform the sentencing court of the "full nature and extent" of Merlo's actions and conduct relating to the case. The agreement stated that the actual sentence was within the discretion of the district court, that there was no agreement as to what Merlo's sentence would be, and that "no promises or representations ha[d] been made to the [d]efendant as to that sentence" the court would impose. The government did, however, promise, that, in exchange for Merlo's guilty plea and full cooperation, it agreed not to use "new information" Merlo provided to the government against him at sentencing. It stated that such information "may be revealed to the Court but may not be used against Defendant in determining Defendant's sentence range, choosing a sentence within the range, or departing from the range." Therefore, any information provided by Merlo to the government after the plea agreement, if provided in cooperation with the plea agreement, could not be used by the government or the court to determine Merlo's sentence. The government could, however, disclose the information to the court.

On October 15, 2009, the probation officer issued a Presentence Investigation Report (PSR) for Merlo. The PSR calculated Merlo's base offense level as 26. Two levels were added because his conduct was intended to encourage persons other than his co-conspirators to violate internal revenue law or impede the computation or assessment of revenue. Three levels were added because Merlo played a managerial or supervisory role in STIC. This resulted in an adjusted offense level of 31. From this, three levels were subtracted for acceptance of responsibility and a timely plea of guilty. Merlo's total offense level was calculated as 28. His criminal history category was I.

Therefore, his guideline range was 78 to 97 months of imprisonment. His statutory maximum, however, was 60 months of imprisonment. 18 U.S.C. § 371.

In response to the PSR, the government sent two letters that addressed its use of additional information Merlo had provided during his cooperation with the government. The first, dated December 11, 2009, stated in relevant part:

> Please note that *some of the information contained in this letter was obtained from Mr. Merlo during proffer sessions* or after he reached his plea agreement with the Government. This information was provided as part of Mr. Merlo's agreement to cooperate against others. As specified by the plea agreement, this information is governed by U.S.S.G. § 1B1.8. Further, . . . the parties stipulated that "[s]uch information may be revealed to the Court *but may not be used* against Defendant in determining Defendant's sentence range, choosing a sentence within the range, or departing from the range." *Accordingly, we will not use this information against Mr. Merlo within these parameters.*

(emphasis added). The government noted that it would not use the information Merlo provided during proffer sessions to attempt to influence the court to make an upward departure, and that the government believed that such use would be illegal under U.S.S.G. § 1B1.8. However, the government did state that if Merlo attempted to secure a downward departure, the government could use the information "to resist a downward departure and the [c]ourt can use it to deny [a downward departure]."

In a second letter, sent January 11, 2009, the government retracted its statement that, should Merlo attempt to secure a downward departure, the government could use information gathered from Merlo during his cooperation with the government against him. The government changed its position because Merlo's counsel objected, arguing that the plea-agreement statement that "such

information . . . may not be used against Defendant in . . . departing from the range" included a downward departure from the range. The government stated that this was "a reasonable alternate interpretation of an ambiguous provision," and that they "agreed to revise our position and accept Merlo's interpretation." The letter stated that the *court* could use the information in such an instance, as stated in U.S.S.G. § 1B1.8, but that the government would not do so.[1]

On April 12, 2010, before Merlo's sentencing hearing, the government filed a motion asking the court to consider granting a downward departure based on U.S.S.G. § 5K1.1. The government requested that the court grant Merlo a downward departure to a level of 24, which would give Merlo a guideline range of 51 to 63 months of imprisonment.

At the sentencing hearing, held April 19, 2010, the court stated that it granted the government's motion for a downward departure, but only to the extent of a level 27, not level 24 as the government had requested. At level 27, Merlo's guideline range was 70 to 87 months of imprisonment. His statutory maximum sentence was 60 months.

---

[1]Section 1B1.8 states:
(a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

(b)The provisions of subsection (a) shall not be used to restrict the use of information:
  (1) known to the government prior to entering into the cooperation agreement;
  . . .
  (5) in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under 5K1.1.

In its statement at sentencing, the government argued that Merlo should receive a sentence of 51 to 60 months of imprisonment and pay "significant restitution." The government's primary thrust in its argument was that Merlo knew that the actions he took at STIC was fraudulent when he took them. In support of this point, the government pointed to facts from Merlo's PSR; an email exchange admitted into evidence at the trial of his co-defendants that showed Merlo arranging for a client's payment to go through an offshore entity to make the payment look like attorney's fee; and Merlo's inclusion in emails stating that a client would borrow back the premium he had paid in the same year that he paid it. The government also produced an email, not admitted at the trial of his co-defendants, that showed Merlo telling a prospective client that a retroactive loss-of-income insurance policy was available to help his company, in the government's words, to shelter money the prospective client made that year. The government also pointed to an "array or circumstantial evidence," that tended to show Merlo's knowledge about the fraud. This evidence included Merlo's handwritten notes, and Merlo's leadership positions within STIC, including having an ownership interest and participating in frequent meetings with STIC's owners Peggs and Larsen. Finally, the government stated that Merlo came to the authorities not because he had a change of heart, but because Stone and Larsen had cut him out of the conspiracy.

Merlo did not object at any point during the government's lengthy statement.

Deeming Merlo's offense "un-American" and "unpatriotic," the court sentenced Merlo to 51 months of imprisonment, followed by one year of supervised release. The judge waived a fine and reserved judgment on the issue of restitution. The court asked whether there were any legal

objections to the sentence or any reasons that had not already been argued why the sentence should not be imposed. There were no objections to the sentence.

As requested by the court at sentencing, the government and Merlo both submitted briefs on restitution. The parties stipulated that STIC clients had paid $915,728.40 for LOI insurance between 1996 and 2000, and that this amount represented money that should have been taxed as corporate income. The government argued that Merlo was not only vicariously liable, but that the evidence proved that Merlo was also directly responsible for the tax losses. The government submitted "voluminous documentation" to support its position. The government requested restitution in the amount of $944,398.

An evidentiary hearing on restitution was held on July 2, 2010. At the outset of the hearing, the judge stated that the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, required that the full amount of loss be subject to restitution. The court stated that restitution is not limited to loss from overt acts that supported defendant's conviction, that the court has discretion to order restitution for losses from any conduct that was part of the larger conspiracy, and that joint-and-several liability is appropriate among co-conspirators. *United States v. Elson*, 577 F.3d 713 (6th Cir. 2009); *United States v. Bogart*, 576 F.3d 565 (6th Cir. 2009); *United States v. Collins*, 209 F.3d 1 (1st Cir. 1999). The sentencing judge found that the government had established by a preponderance of the evidence that the tax losses resulting from the conduct of the co-conspirators were reasonably foreseeable and were therefore subject to restitution. The judge noted that Merlo's handwritten notes, submitted by the government and a product of Merlo's cooperation with the

government, were a "clear indication of his direct involvement" and that "Mr. Merlo by his words and his actions, by his own records has tied himself very tightly to the conspiracy."

The sentencing judge then issued a modified judgment, requiring Merlo to pay $944,397 in restitution to the Internal Revenue Service.

On appeal, Merlo challenges his sentence and restitution. He argues that the government violated the plea agreement by using information against him at sentencing that he had provided during cooperation.

## III

Merlo argues that he cooperated extensively with the government in accordance with his plea agreement, providing 8,000 pages of documents, notes, and his financial and tax records. He argues that the government violated the plea agreement by providing the information to the court, by urging the court not to grant more of a downward departure than the government had recommended, and by ordering restitution for all the frauds committed by Merlo's co-defendants.

Violation of a plea agreement entitles a defendant to vacation of his sentence and resentencing before a different judge. *Santobello v. New York*, 404 U.S. 257, 263 (1971). The interpretation of a plea agreement is a question of law that this court reviews *de novo*. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). Prosecutors are "held to meticulous standards of performance" and the court "will thus construe ambiguities in a plea agreement . . . against the government." *Ibid.* (citing *United States v. Vaval*, 404 F.3d 144, 152–53 (2d. Cir. 2005) and *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000)) (internal quotation marks and brackets omitted).

However, if an error is not preserved, the reviewing court's ability to remedy the error is "strictly circumscribed." *Puckett v. United States*, 556 U.S. 129, 134 (2009). When a defendant fails to object to the government allegedly violating his plea agreement, we must review the alleged violation for plain error alone. *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002). Merlo concedes that he did not object to the government's or the court's use of the documents in question.[2]

"Plain error" means that reversal requires (1) error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Swanberg*, 370 F.3d at 627 (internal quotation marks omitted).[3] This is a high standard—a defendant will not be able to show the requisite prejudice if he has, "obtained the benefits contemplated by the deal anyway (*e.g.,* the sentence that the prosecutor

---

[2]Merlo argues that, while he did not object to the use of the documents, he did object to the conclusions drawn by the government—that Merlo was deeply and directly involved in the conspiracy—and that this objection should suffice to preserve error. Merlo's argument fails. *See, e.g.*, *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004) (holding that plain-error review applied when defendant generally objected to a sentencing enhancement but did not specifically argue that the government had breached the plea agreement).

[3]This circuit has held that any breach of a plea agreement is itself plain error. *Barnes*, 278 F.3d at 648 ("[B]ecause violations of the plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government, . . . the Government's breach constituted plain error.") (quoting *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997) (citation and internal quotation marks omitted)). However, the Supreme Court has clearly decreed that all four steps apply in cases of the government's breach of a plea agreement. *Puckett*, 556 U.S. at 140. A plea breach, the Court reasoned, "does not necessarily render a criminal trial fundamentally unfair . . . and the difficulty of assessing the effect of the error is no greater with respect to plea breaches at sentencing than with respect to other procedural errors at sentencing, which are routinely subject to harmlessness review." *Id.* at 141 (citations omitted) (internal quotation marks omitted).

promised to request) or because he likely would not have obtained those benefits in any event . . .

." *Puckett*, 556 U.S. at 141–42.

> The relevant portion of Merlo's plea agreement read as follows:

> In exchange for Defendant's agreement to cooperate with the government, as outlined above, the government agrees, pursuant to the protections of United States Sentencing Guidelines . . . §1B1.8, not to use *new* information that Defendant provides (pursuant to this agreement) about Defendant's own criminal conduct against Defendant at sentencing in this case. Such information *may be revealed to the Court* but may not be used against Defendant in determining Defendant's sentence range, choosing a sentence within the range, or departing from the range. . . . There will be no restrictions on the use of information: (1) previously known to law enforcement agencies; (2) revealed to law enforcement agencies by, or discoverable through, an independent source, or (3) in a prosecution for perjury.

(emphasis added).

By the plain terms of the plea agreement, in order to prove that the government violated the plea agreement, Merlo must prove that the government used new information provided pursuant to the agreement against him at sentencing, and that the information was used in order to determine his sentencing range, his sentence within a range, or in departing from the range. Merlo cannot show that the government did so.

Merlo argues that the sentencing judge relied on new information provided by Merlo to the government as part of his cooperation pursuant to the plea agreement. Merlo argues that the emails about retroactive loss-of-income insurance policies, the handwritten notes, and other documents provided by the government in response to the PSR fall into this category. He alleges that in its brief regarding restitution, the government sought to hold Merlo responsible for tax losses attributed to

clients of other members of the conspiracy, that the court relied on the government's allegations, and that these allegations influenced the amount of restitution Merlo was ordered to pay.

The government, however, argues that the documents Merlo objects to were actually provided to a grand jury in response to a subpoena, not to the government as part of Merlo's cooperation. Because of this fact, the government argues that the documents were not "new" under the terms of the plea agreement. In support of its argument, the government points to its motion for a downward departure filed prior to sentencing. In this motion, the government referenced the over-8,000 pages of documents that Merlo provided to the government. It stated that "some of these documents were produced under compulsion in response to a grand jury subpoena . . . others were not." The motion also specifically stated that "Merlo produced his notes . . . in response to a subpoena."

The only documents that appear to have been reviewed by the court in determining Merlo's sentence and restitution are Merlo's handwritten notes and one email not admitted as a trial exhibit. These are considered in turn.

During the sentencing and restitution hearing, the judge mentioned having read through Merlo's handwritten notes, and said that Merlo's "fingerprints in his own handwriting are all over this whole thing." Merlo's counsel also mentioned Merlo's notes (notably not objecting to their use as a violation of the plea agreement), but only to say that they portrayed Merlo as being more heavily involved with the conspiracy than he in fact was. The government referenced the notes during its rebuttal, when it stated that "the notes reflect . . . [that Merlo] was involved in the discussions of the

paid claim that the [c]ourt has heard testimony of." The sentencing judge mentioned Merlo's notes, stating that they showed his "direct involvement" with the conspiracy.

However, these documents were not "new." The motion for a downward departure specifically stated that "Merlo produced his notes . . . in response to a subpoena." Merlo has failed to demonstrate that the government committed error, let alone plain error, in allowing the court to be influenced by Merlo's notes in its sentencing and restitution decisions. Also, it is not clear that the notes were used to determine his sentencing range, his sentence within a range, or in departing from the range. Thus, even if it were plain error for the court to be provided with the handwritten notes, which Merlo has not demonstrated, he has not shown that he would not have received the below-maximum sentence of 51 months of imprisonment without the notes. Ample evidence still existed to prove to the court that Merlo knew that his actions were fraudulent—his leadership position within STIC, for example, or the voluminous amounts of material he produced pursuant to the subpoena, including the emails introduced at sentencing that incriminated him. There is simply no evidence, other than Merlo's own bald assertion, that the government breached the plea bargain with regard to Merlo's notes, or that, if they did, the breach significantly affected Merlo's rights. Therefore, his argument fails.

Similarly, Merlo's argument that the government's use of an email not admitted at sentencing was a violation of the plea agreement and thus merits reversal, also must fail. Merlo has not proved that any of the documents the court discussed during sentencing or the restitution hearing were provided to the government specifically as part of his cooperation with the government, rather than, or distinct from, his response to the subpoena. Merlo, therefore, has again not made out a plain

violation of his plea agreement.  Further, there is no evidence that suggests that Merlo would have received a different sentence if that single email had not been presented to the court.  Thus, Merlo's argument must fail.

IV

For the foregoing reasons, we AFFIRM the judgment of the district court.