NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0926n.06

Case Nos. 13-5716/5721/5859

**FILED**
Dec 15, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| KELLYE CLIMER; HAROLD MCDUFFIE, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, SUTTON, and McKEAGUE, Circuit Judges.

**SILER**, Circuit Judge. These consolidated appeals involve a drug conspiracy with twenty indicted defendants. *See* 21 U.S.C. §§ 841 & 846. Defendants Kellye Climer and Harold McDuffie were charged with conspiracy to distribute heroin and to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846 (Count 1). McDuffie was also charged with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841 (Count 2). Both pleaded guilty and now challenge their sentences. For the following reasons, we **AFFIRM** both sentences.

## I.    CLIMER

### A.  Factual Background

In 2011, the Drug Enforcement Agency ("DEA") commenced an investigation into the Harold McDuffie Drug Trafficking Organization ("DTO").    Shortly thereafter, DEA investigators detained Climer after witnessing her purchase heroin from co-defendant Michael Mason.  Climer began cooperating with the investigators and provided them with information about the DTO.  The investigators then learned that Climer was on federal supervised release, and she forfeited the opportunity to cooperate because of her continued drug addiction.[1]

Over the next several months, DEA investigators acquired additional information concerning the DTO through wiretaps and physical surveillance.  During that time, they intercepted several calls between Climer and McDuffie in which Climer sought to purchase distribution quantities of heroin.

In 2012, Climer was indicted for conspiracy to possess with intent to distribute in excess of one kilogram of heroin.  She initially consented to pre-trial detention.  While detained, Climer detoxed and resumed working with the Government.  She subsequently was released on bond.

Several months later, she pleaded guilty pursuant to a plea agreement.  Based on an offense level of twenty-one and a criminal history category of III, the presentence report ("PSR") assigned Climer a guidelines range of forty-six to fifty-seven months for the underlying charge.[2] The calculation in the PSR was based upon the Government's recommended drug quantity of at least eighty but less than one hundred grams of heroin.

---

[1] Climer was on federal supervised release in criminal case 06-20065 at the time she was indicted for Count 1.  The district court sentenced her for the underlying charge and for violating supervised release.  Consequently, the 2006 case is part of this consolidated appeal.

[2] The guidelines range for the supervised release violation was twelve to eighteen months.

The court sentenced Climer to a total term of fifty-seven months of incarceration. She was sentenced to forty-eight months for the conspiracy charge and eighteen months—nine months to be served concurrently with and nine months to be served consecutively to the forty-eight month sentence—for the supervised release violation.

## B. Climer's Plea Agreement

On appeal,[3] Climer claims the Government breached the plea agreement on three occasions. First, she argues that the Government failed to recommend that she receive the minimal-participant reduction. Second, she argues that the Government failed to recommend a sentence at the low end of the guidelines until after the court imposed the sentence. Finally, she argues that the Government failed to make a motion under USSG § 5K1.1 on her behalf.

Whether the Government's conduct violates a plea agreement is a question of law that we review *de novo*. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). However, "[w]hen a defendant fails to object to the government allegedly violating his plea agreement, we must review the alleged violation for plain error alone."[4] *United States v. Merlo*, 464 F. App'x 518, 522 (6th Cir. 2012) (citing *United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002)). Under plain error review, Climer must "show (1) error (2) that 'was obvious or clear,' (3) that 'affected [her] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation

---

[3] Climer timely filed notices of appeal in both cases. However, the brief in her appeal for violating supervised release is identical to her brief in the underlying case. Because Climer failed to raise any objections to her sentence for violation of supervised release, we determine she has waived any argument with respect to her sentence in criminal case number 06-20065.

[4] Climer asserts that she preserved her objections because, in the context of the minimal-participant discussion, counsel stated "[t]hat's not what the plea agreement contemplated." Because Climer did not properly object to the Government's alleged violations of her plea agreement, we review for plain error.

of the judicial proceedings.'"  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 449 (6th Cir. 2006)).

### 1.  Minimal-Participant Reduction

Pursuant to the plea agreement, the Government agreed to recommend that Climer qualify as a minimal participant.  Climer relies on two arguments in support of her position that the Government violated the plea agreement by failing to stand by its recommendation that she receive a four-level reduction under USSG § 3B1.2(a) for being a minimal participant.  Both arguments are without merit.

Climer contends that the Government had a duty to object to the absence of the minimal-participant reduction in the PSR.  She fails to recognize that the PSR contains a section titled "Impact of Plea Agreement" that calculates an alternative guidelines range incorporating the Government's minimal-participation recommendation.  Climer cites no law from this circuit that requires the Government to object to a probation officer's factual determinations in a PSR.  And the plea agreement itself does not impose that requirement on the Government.  Instead, Climer relies on *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992), in support of her position that the Government had a duty to object to the PSR because it did not include a four-level minimal-participant reduction.  That case, however, involved a plea agreement with additional obligations that were explicitly bargained for.  *Id.* at 265.  Those explicit obligations are not present in this plea agreement.  *Canada* does not stand for the more general proposition that Climer asserts.

Climer also contends that the Government had a duty to affirmatively advocate for the minimal-participant reduction and failed to do so at the sentencing hearing.  She claims that the Government did not explain the basis for its minimal-participant recommendation.  However, "[t]he government is not required to support enthusiastically an agreed-upon recommendation."

*United States v. Mason*, 410 F. App'x 881, 889 (6th Cir. 2010). In further support of her argument, Climer alleges that the Government merely agreed with the district court that she was a drug dealer and intimately involved with the DTO. "There are, however, limits to what a defendant reasonably may expect." *United States v. Saxena*, 229 F.3d 1, 6 (6th Cir. 2000). And "[t]he government's obligation to furnish relevant information to the sentencing court does not vanish merely because the government has a corollary obligation to honor commitments made under a plea agreement. These two obligations coexist—and prosecutors must manage them so as to give substance to both." *Id.* While it is undisputed that the plea agreement required the Government to recommend a minimal-participant reduction under USSG § 3B1.2, Climer's argument that the Government failed to do so is not supported by the record.

At the sentencing hearing, the district court stated that it understood that Climer "was not only using, but also dealing," and in response, the Government stated "[t]hat's correct." The court then indicated that Climer received a break because she was only being held responsible and sentenced for at least eighty but less than one hundred grams, an amount significantly less than that charged in the indictment. The Government then recommended the minimal-participant reduction, stating:

> [I]t is true Ms. Climer has been restricted as to her overall amount, however, because we agreed to do so in the plea agreement to recommend the minimal participant reduction, we are going to make that recommendation to the court. . . . It's in the plea agreement, we're going to stand by the plea agreement as to that.

Thereafter, the court asked the Government if the relevant drug quantity amount—at least eighty grams but less than one hundred grams of heroin—was a "conservative estimate" of Climer's use. In response, the Government indicated that it was a conservative estimate of her personal use and stated that the number was originally higher when it included the amount she distributed to her friend.

After a thorough discussion of USSG § 3B1.2, the district court indicated that it was reluctant to apply the reduction because Climer was only being held responsible for the amount of heroin she personally used, and she was familiar with the DTO's structure and had direct access to the head of the DTO, McDuffie, which was inconsistent with being a minimal participant. In its analysis, the court recognized that Climer fared better with the reduced drug quantity amount and without the minimal-participant reduction than being held responsible for more than one kilogram of heroin with the minimal-participant reduction. Climer argued that, under the plain language of the plea agreement, the court could accept both the reduced drug quantity amount and the minimal-participant reduction.

The district court continued to express reservations with applying the reduction, noting that "[t]he government has to stay with its recommendation here" and asked if there was "anything else from the United States." At that time, the Government stated, "[w]e just stand by our recommendation in the plea agreement" and further stated that it "agree[s] with [defense] counsel's characterization of what was intended in the plea agreement, and that is our recommendation."

We conclude that the Government satisfied its obligation to recommend Climer receive a minimal-participant reduction.

### 2. Recommended Length of Sentence

Climer's next argument—that the Government breached the plea agreement by not recommending a sentence at the low end of the guidelines range until after the district court imposed the sentence—is equally flawed. The plea agreement states that "the United States agrees to recommend that [Climer] be sentenced at the low end of the applicable sentencing guideline range."

Climer's reliance on *United States v. Barnes*, 278 F.3d 644 (6th Cir. 2002), is inapposite. In that case, like the present, the plea agreement required the Government to recommend a sentence at the low end of the guidelines range. *Id.* at 646. However, in *Barnes*, the government remained quiet at the sentencing hearing and failed to expressly request that the defendant be sentenced at the low end of the guidelines range. *Id.* By contrast, the Government in this case stated at sentencing that "I did want to note for the record I realize that because the court didn't ask for our recommendation, but pursuant to the plea agreement we were going to recommend the low end, the 46 [month term]."[5]

More importantly, Climer misrepresents the sequence of events to bolster her argument. She argues that "the court sentenced [her] to 48 months, and it was not till after [she] was sentenced that the Government brought up its guideline recommendation." In fact, the district court began its analysis under § 18 U.S.C. 3553(a) immediately after hearing from Climer. It did so without asking the Government its position with respect to sentencing. Therefore, the Government did not have the opportunity to make the low-end recommendation at that time.[6] During its discussion of the § 3553(a) factors and prior to the Government recommending a low-end sentence, the court signaled its views on an appropriate sentence length.

At its first opportunity, the Government recommended a sentence of forty-six months—a sentence at the low end of the guidelines range of forty-six to fifty-seven months for the underlying charge. Upon completing its § 3553(a) analysis and after the Government made its

---

[5] The plea agreement was limited to the charge of conspiracy to possess with intent to distribute heroin. Hence, the requirement to recommend a sentence at the low end of the sentencing guidelines did not apply to Climer's sentence for violation of supervised release in criminal case 06-20065.

[6] While the Government has a duty to stand by the terms of the plea agreement, the Government is not obligated to interrupt the court.

low-end recommendation, the district court imposed a combined sentence of fifty-seven months—of which forty-eight months was for the underlying charge.

### 3. Substantial Assistance Motion

Climer's final argument on appeal is that the Government breached the plea agreement by failing to make a substantial assistance motion under USSG § 5K1.1. The language of the plea agreement is clear and unambiguous. The Government agreed to "*consider* making a motion pursuant to U.S.S.G. § 5K1.1 on behalf of [Climer] at the time of her sentencing." (Emphasis added.) And the "decision whether to make a motion pursuant to § 5K1.1 is within the *sole discretion* of the United States," and "new criminal activity would be [a] reason not to make such a motion." (Emphasis added.) If Climer "committed or attempted to commit any additional crimes . . . from the date of [Climer's] signing of [the] agreement to the date of [Climer's] sentencing, . . . the government w[ould] be released from its obligations and would become free to argue for any sentence within the statutory limits."

Based on the plain language of the plea agreement, the Government was only required to consider making a substantial assistance motion, and the decision to do so was within its sole discretion. After entering into the plea agreement and prior to sentencing, Climer possessed and used heroin. Possessing and using heroin is illegal and constitutes "new criminal activity." Not only was making a motion under USSG § 5K1.1 discretionary, Climer's "new criminal activity" was an explicit reason in the plea agreement for the Government not to make the motion.

Finding no breach of the plea agreement, we affirm Climer's conviction and sentence.

## II. McDUFFIE

### A. Factual Background

McDuffie pleaded guilty to the charges of conspiracy to distribute heroin and to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846 (Count 1) and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 (Count 2). The district court advised him that the penalties for Count 1 "are no less than ten years in prison [and] not more than life." As part of the plea agreement, however, McDuffie retained the right to challenge the quantity of heroin at sentencing.

The PSR provided that "McDuffie is responsible for the entire amount of heroin distributed by the [DTO], which is at least one kilogram of heroin," because he "served as the cell head of the [DTO]." As a result, the guidelines range in the PSR incorporated enhanced statutory penalties for the § 846 charge (Count 1), yielding a mandatory minimum of ten years and a maximum of life. The PSR also included three enhancements: (1) a two-level enhancement under USSG § 2D1.1(b)(1) for the possession of a firearm during the course of the drug conspiracy; (2) a two-level enhancement under USSG § 2D1.1(b)(12) for maintaining a stash house for the drug conspiracy; and (3) a four-level enhancement under USSG § 3B1.1(a) for being an organizer or leader of a drug conspiracy with five or more participants. McDuffie filed objections to the findings in the PSR, arguing that he was not responsible for more than one kilogram of heroin and that he should not receive any of the recommended sentencing enhancements.

At the sentencing hearing, the Government called five witnesses who testified that McDuffie was responsible for more than one kilogram of heroin. These witnesses also testified to facts that support each of the three sentencing enhancements.

Officer Joshua Leslie of the Memphis Police Department testified about a search warrant executed at 1559 Maplewood on May 17, 2012—the same day as McDuffie's arrest. During the search, investigators discovered heroin, a digital scale and packaging material. Additionally, Officer Leslie testified that he first encountered Climer when she was purchasing heroin from Michael Mason ("Michael") at the Naylor Drive house. Officer Leslie's investigation also revealed that Michael sold heroin at that house for McDuffie.

Based on the findings at the sentencing hearing, McDuffie was assigned a total offense level of thirty-nine and a criminal history category of V, yielding a guidelines range of 360 months to life. The district court applied the enhanced statutory penalties under § 846 with a mandatory minimum of ten years because of the evidence that McDuffie distributed more than one kilogram of heroin. The district court sentenced McDuffie to concurrent terms of twenty-seven years on the § 846 charge (Count 1) and twenty years on the § 841 charge (Count 2).

## B. Enhanced Mandatory Minimum

If a defendant fails to raise a Sixth Amendment challenge before the district court, we apply plain error review. *See United States v. Mack*, 729 F.3d 594, 607 (6th Cir. 2013). In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court later applied the *Apprendi* rule in *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013), to facts that increase the statutory minimum penalty.

The Government concedes that "the district court's application of enhanced statutory penalties based on its own drug-quantity findings constitutes an error that is plain." McDuffie pleaded guilty, and at his sentencing hearing, the district court found that there was

"overwhelming" evidence to show that he was responsible for distributing roughly seven kilograms of heroin. Despite this finding, the district court calculated McDuffie's base offense level based on a quantity of one to three kilograms of heroin—an amount that still triggered enhanced statutory penalties of not less than ten years and not more than life.

The next question is whether McDuffie's substantial rights were affected. McDuffie does not challenge the district court's finding that he was responsible for more than one kilogram of heroin; rather, his argument is limited to the procedure the court employed in making this finding. The latter argument only establishes that there was an *Alleyne* error; it does not address whether that error violated McDuffie's substantial rights, as required to show plain error.

We have upheld sentences imposed after the district court, rather than a jury, found that there was overwhelming undisputed evidence that a defendant was responsible for the facts triggering additional statutory penalties—either an enhanced statutory maximum or minimum. *See United States v. Stewart*, 306 F.3d 295, 315-18 (6th Cir. 2002) (declining to reverse for plain error under *Apprendi*); *Mack*, 729 F.3d 594, 606-09 (declining to reverse for plain error under *Alleyne*). *Stewart*, like the present case, involved an enhanced statutory penalty in the drug-quantity context. In *Stewart*, three defendants pleaded guilty and received sentences with an enhanced statutory maximum based solely on the district court's drug quantity findings at sentencing. 306 F.3d at 315-18. Based on "the overwhelming and largely uncontroverted evidence regarding drug quantity" presented to the district court, we affirmed the defendants' sentences. *Id.* at 318. In doing so, we stated that "affirming [the defendants'] sentences would not seriously affect the fairness, integrity or public confidence of the judicial proceedings." *Id.*

In *Mack*, the defendant was sentenced by a jury for violating 18 U.S.C. § 924(c). 729 F.3d at 607. The element of "brandishing" increased the statutory minimum from five to seven

years, but the verdict form "did not require the jurors to make a specific finding about whether the defendant brandished a firearm." *Id.* At sentencing, the district court found that the defendant brandished a firearm—increasing the statutory minimum sentence. *Id.* In holding that any *Alleyne* error was harmless—*i.e.*, did not violate the defendant's substantial rights—we concluded that, based on the evidence at trial, "the jury would have found beyond a reasonable doubt . . . that the defendant brandished a firearm." *Id.* at 609.

Taken together, *Stewart* and *Mack* stand for the proposition that "an *Alleyne* challenge will fail on plain-error review if the record leaves us convinced that . . . a properly instructed jury would have found the [defendant] guilty of distributing the requisite threshold quantities of narcotics." *United States v. Long*, 748 F.3d 322, 331 (7th Cir.), *cert. denied sub nom. Coprich v. United States*, 134 S. Ct. 2832 (June 16, 2014) (quotations and citation omitted).

Here, there is overwhelming evidence that McDuffie was responsible for more than one kilogram of heroin. The district court found Dirish Hottiman, Michael, Latano Hall and Ulysses Mason ("Ulysses") to be credible witnesses. Their testimonies of McDuffie's drug-quantity amount is as follows: (1) Hottiman testified that McDuffie admitted to moving more than four kilograms of heroin; (2) Michael testified that before 2007 he sold seventy-five to one hundred grams of heroin per week for McDuffie and from 2011 until McDuffie's arrest in 2012, he sold eight to ten grams of heroin per day for McDuffie; (3) Hall testified that when he sold heroin for McDuffie he would sell between four and nine grams of heroin daily; and (4) Ulysses testified that, on average, the DTO sold 200 grams of heroin per month between 2007 and 2010—which is roughly 7.2 kilograms in the three-year period.

Any reasonable jury would have found that McDuffie was responsible for distributing in excess of one kilogram of heroin. Consequently, we hold that McDuffie failed to show that his substantial rights were affected by the court's error.

## C. Witness Testimony

Sentencing decisions are reviewed for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007).

McDuffie claims that the district court erred when it did not exclude testimony of Michael,[7] Hall and Ulysses based on witness collusion. The only alleged evidence of witness collusion came from McDuffie himself. At his sentencing hearing, his counsel told the court that "McDuffie came back after lunch, and he informed us that within the marshal's cell area where everybody is kept that Mr. Michael Mason went back and explained to everyone what the crosses were, had a large discussion about the testimony." McDuffie then requested that the court prohibit Hall and Ulysses from testifying.

The court allowed the witnesses to testify and indicated the question of any alleged collusion could be further developed on cross-examination. On cross-examination, Michael testified that he spoke generally about the case at lunch. And Michael testified that he did not tell either Hall or Ulysses specifics about his testimony, including the total amount of heroin he sold, the amount that he sold on a daily basis or the amount of money he made selling heroin. Corroborating Michael's testimony, Hall testified that Michael was not speaking directly to him and that he was not paying attention to what Michael was saying. Similarly, Ulysses testified that he did not speak with Michael or Hall about the court proceedings. On re-direct, the

---

[7] McDuffie first objects to Michael's testimony on appeal, so we review for plain error whether the district court erred in considering the testimony.

Government asked Hall and Ulysses if anyone told them how to testify, and they both replied "no."

In sum, McDuffie has failed to show that the district court erred in considering Michael's testimony or abused its discretion in considering Hall's or Ulysses' testimony.

### D. GPS Tracking Device

In his one-paragraph argument about a GPS tracking device affixed to his vehicle, McDuffie captions the section of his brief as a suppression claim, and he cites the standard we employ for reviewing a suppression claim. Yet, McDuffie seems to raise an ineffective-assistance-of-counsel claim.

McDuffie forfeited his suppression argument by not raising it before the district court. Federal Rule of Criminal Procedure 12 formerly indicated that the failure to raise a suppression argument on a timely basis meant that argument was "waived," which is to say "intentionally relinquished or abandoned." *Puckett v. United States*, 556 U.S. 129, 138 (2009). Waived arguments are not reviewable on appeal. *See id.* Recent amendments to Criminal Rule 12, however, suggest that any such failure amounts to a forfeiture, to which plain-error review applies. *See* Fed. R. Crim. P. 12(c)(3); 52(b). But here, any error, if error there was, did not affect McDuffie's "substantial rights." *Puckett*, 556 U.S. at 135. The GPS tracker stopped working within twenty-four fours of its placement on McDuffie's car, so police collected no useful evidence from it.

McDuffie's ineffective-assistance-of-counsel claim is not ripe for review. Any alleged ineffectiveness of McDuffie's trial counsel is not apparent in the record. *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (holding that "[i]neffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the

record regarding counsel's performance can be developed in more detail" and noting that we "typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record").

## E. Procedural Reasonableness Review

McDuffie lodges several challenges to the district court's guidelines calculations on the basis that the court improperly applied the following sentencing enhancements: (1) a two-level enhancement under USSG § 2D1.1(b)(1) for possessing multiple firearms; (2) a two-level enhancement under USSG § 2D1.1(b)(12) for maintaining a drug stash house; and (3) a four-level enhancement under USSG § 3B1.1(a) for being a leader or organizer of the DTO that involved five or more participants or was otherwise extensive.

"The government bears the burden of establishing the factors supporting the enhancement by a preponderance of the evidence." *United States v. Ledezma*, 26 F.3d 636, 644 (6th Cir. 1994). On appeal, we review a district court's sentencing decisions under the deferential abuse-of-discretion standard for reasonableness. *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009). "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Guidelines range. . . ." *Id.* (citing *Gall*, 552 U.S. at 51).

### 1. Dangerous Weapon Enhancement

Pursuant to USSG § 2D1.1(b)(1), a defendant convicted of a drug offense may receive a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the offense. "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." *Id.* § 2D1.1 cmt. 11(A). We review a district court's factual finding that the defendant possessed a firearm during a drug offense for clear error. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008).

Before the district court can apply the enhancement, the Government must show "by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012) (quoting *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007)) (internal quotation marks omitted). The burden then shifts to the defendant to prove it was "clearly improbable" that the weapon was connected to the offense. *Id.* When determining whether an enhancement under USSG § 2D1.1(b)(1) was appropriate, we consider the following factors:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*Id.* at 515 (quoting *United States v. Edmonds*, 9 F. App'x 330, 332 (6th Cir. 2001)). None of these factors alone is controlling. *Id.*

The evidence in the record supports the finding that McDuffie was in possession of firearms. He was arrested at his home located at 3850 Innsbrook Drive in Memphis. During the course of his arrest, McDuffie informed the DEA investigator that three loaded firearms—a Taurus .38 pistol, a Maverick/Mossberg 12 gauge shotgun and a .45 caliber Glock pistol—were located in the master bedroom. *See United States v. Williams*, 345 F. App'x 979, 980 (6th Cir. 2009) (noting that semi-automatic pistols are used by drug traffickers); *United States v. Howard*, 36 F. App'x 758, 762 (6th Cir. 2002) (observing that a semi-automatic pistol is a type "commonly seen in drug offenses"). Two firearms were hidden beneath the mattress and the other behind the nightstand.

There was also evidence to support the district court's finding that it was not "clearly improbable" that the firearms were related to the charged offense. First, McDuffie was the head

of the DTO, and he made significant amounts of money daily from the sale of heroin. Second, $3,680 was hidden in a bathroom connected to the master bedroom. This large sum of cash was found in close proximity to the firearms. Third, on the day the firearms were located at McDuffie's residence, the Government executed a search warrant at another residence connected to McDuffie and found evidence of drug trafficking. The Government recovered heroin and ammunition that matched at least one of McDuffie's firearms. *See Wheaton*, 517 F.3d at 368 (stating that the district court correctly noted that "'[t]he drugs and the gun do not have to be in the same location' in order for the gun to be attributable to [the defendant], because the residence itself was associated with the drug conspiracy").

Moreover, McDuffie failed to provide the district court with any non-drug-related reason why he had three loaded firearms—two concealed underneath a mattress and the other behind a nightstand—in "place[s] indicating purposeful concealment rather than a place indicating possession for a legal purpose." *Id.* (quoting *United States v. Chalkias*, 971 F.2d 1205, 1217 (6th Cir. 1992)); *see United States v. Kimbrough*, 376 F. App'x 592, 597 (6th Cir. 2010) (concluding that the firearm enhancement was appropriate in part because the defendant "never offered an alternative explanation for the firearm"). Hence, McDuffie's arguments, that the cash found in his house could have been from a legitimate business and that no drugs were located in close proximity to the weapons, are insufficient to satisfy his burden that it was "clearly improbable" that the firearms were related to the drug conspiracy. *See Wheaton*, 517 F.3d at 368.

### 2. "Maintaining a Premises" Enhancement

Any defendant convicted of a federal drug crime who "maintained a premises for the purpose of manufacturing or distributing a controlled substance" is eligible for a two-level enhancement. USSG § 2D1.1(b)(12). This enhancement applies to any defendant who "(1)

knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013).

The district court found that McDuffie maintained drug stash houses, specifically the residences located at 3587 Naylor Drive and 1559 Maplewood—the "Boom Boom Room." The district court noted that the utilities at the Naylor Drive residence were in McDuffie's name. This alone is sufficient to satisfy the first two elements necessary to apply the enhancement.

As for the final element—whether these residences were maintained for the purpose of manufacturing or distributing heroin—the drug distribution "need not be the sole purpose for which the premises was maintained." USSG § 2D1.1 cmt. n.17. Among the factors considered are "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." *Id.*

Here, there is ample evidence to support the district court's findings that McDuffie maintained the Naylor Drive and Maplewood residences for distributing heroin. McDuffie owned the Naylor Drive house. He admitted to Hottiman that he used "runners and stash houses" to facilitate the DTO, and his admissions were confirmed by the testimony of Michael, Hall and Ulysses. Furthermore, McDuffie instructed Michael to sell heroin at the Naylor Drive house. After Hall returned from a run to Chicago to purchase heroin, McDuffie told him to go to the house on Naylor Drive to obtain bags to prepare the heroin for resale. Finally, Ulysses testified that McDuffie told him that it was "okay to go to [various] houses"—one of which was on Maplewood—to sell heroin. Accordingly, we find no error in the determination that McDuffie "maintained" the relevant residences as drug houses.

### 3. Leadership Enhancement

Pursuant to USSG § 3B1.1(a), a four-level enhancement is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Based on the plain language, the district court could apply the enhancement if it found that McDuffie was an organizer or leader of a criminal activity with five or more participants. Alternatively, the district court could apply the enhancement if it found that McDuffie was an organizer or a leader of a criminal activity that was otherwise extensive.

Here, the court found McDuffie to be an organizer or leader of a heroin conspiracy with the requisite number of participants. It also found that the heroin conspiracy was otherwise extensive. McDuffie appears to make two arguments on appeal in support of his position that the court improperly applied the enhancement. Both arguments are without merit.

First, McDuffie claims that the district court incorrectly calculated the number of "participants" in finding that the heroin conspiracy involved five or more participants. Application Note One states that a "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1 cmt. n.1. Here, nineteen other co-defendants were charged in the indictment, and they all pleaded guilty. *See United States v. Baker*, 559 F.3d 443, 449 (6th Cir. 2009) (relying in part on "the indictment [that] charged at least twelve individuals for their involvement in th[e] drug conspiracy, and the record indicates that at least six of those co-defendants—not including defendant himself— pleaded guilty to the charges" in upholding the district court's finding that the offense involved five or more participants).

As part of McDuffie's argument that the court improperly calculated the number of participants, he appears to assert that the enhancement was wrongfully applied because he did

not control five or more participants. In his argument at the sentencing hearing, McDuffie stated "if the witnesses were taken as credible by their own testimony th[e] most people that he was in charge of was about four people. There was Latano Hall, Michael Mason, Taurus Jackson and Ulysses Mason." We have held that "[a] defendant whose sentence is enhanced under U.S.S.G. § 3B1.1(a) or (b) need not directly supervise more than five persons, so long as the defendant exerted some level of control or influence over at least one of five or more persons involved in the criminal activity." *United States v. Morales-Martinez*, 545 F. App'x 495, 497 (6th Cir. 2013) (citing *Baker*, 559 F.3d at 449).

Second, McDuffie challenges the district court's finding that the conspiracy was "otherwise extensive." In determining whether the criminal activity was "otherwise extensive," "all persons involved during the course of the entire offense are to be considered." USSG § 3B1.1 cmt. n.3. Here, twenty individuals were indicted as part of the heroin conspiracy that had been ongoing since at least 2005 until McDuffie's arrest in 2012. There is no question that this operation was extensive.

Finding no merit in McDuffie's claims of error, we affirm his conviction and sentence as well.

**AFFIRMED.**